**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 2:18-CV-62 |
| v. | * | |
| | * | |
| HERCULES, LLC, | * | |
| | * | |
| Defendant. | * | |

**BRIEF OF AMICI CURIAE**
**CITY OF BRUNSWICK AND GLYNN COUNTY**
**OPPOSING CONSENT DECREE**

COME NOW the City of Brunswick, Georgia, and Glynn County, Georgia, amici curiae, and file their brief opposing the entry of the Consent Decree [Dkt. 3-1] proposed by the United States and Hercules, LLC, showing the Court the following:

**I.      Introduction**

From 1948 to 1980, Hercules, LLC, discharged toxaphene – a chlorinated pesticide – into a tidal creek near its chemical plant in Brunswick, Georgia. Toxaphene was banned by the Environmental Protection Agency ("EPA") in 1990, and in 1997, an area comprising more than 200 acres surrounding the Hercules discharge point was designated as a Superfund site by the EPA. After removing some of the contaminated soil in 1999 and 2000, Hercules has taken no further substantive action with respect to the site, which remains contaminated with large amounts of toxaphene.

In 2017, the EPA issued an Interim Record of Decision ("IROD"), setting forth

1

interim remedial action that it would require Hercules to take with respect to one of three sub-sites in the area of the discharge. The EPA explained that it was proposing an interim remedy, rather than a final one, because it did not have sufficient knowledge regarding the toxicity of degraded or "weathered" toxaphene to make a final decision regarding remediation of the site. The IROD was drafted and the proposed Consent Decree was formulated with this understanding. However, subsequent to the filing of the proposed Consent Decree in this case [Dkt. 3-1], the EPA issued its findings regarding the toxicity of weathered toxaphene. Those findings leave no question that the interim remedy proposed in the Consent Decree is insufficient, and indeed may even be counterproductive, to remediating the contamination at the site.

Despite having learned since drafting the proposed Consent Decree that weathered toxaphene is many orders of magnitude more toxic than the "technical toxaphene" that was the sole consideration when the proposed remedy was identified[1], and despite resolution of the contingency that led to the proposal of an interim rather than a final remedy, the United States and Hercules ask the Court to enter their now-outdated Consent Decree. Because the Consent Decree proposes a remedy that is plainly inadequate in light of new findings since the Decree was drafted, the Court should deny the parties' motion to have that Decree made the order of the Court. That the community strongly opposes the Consent Decree, and that the Decree has

---

[1]     *See* Comment of Dr. Peter DeFur, Dkt. 25-1, p. 32 ("The report concludes that 'weathered toxaphene' is considered 300 times more toxic than 'technical toxaphene.'")

numerous additional shortcomings, only strengthens the case that the EPA and Hercules should be sent back to the drawing board to devise a remedy that truly addresses the severe contamination at issue.

## II.    Interest of Amici

The site at issue in this case – Operable Unit 1 ("OU1") – is located along Highway 17, which is a primary economic corridor in the City of Brunswick. OU1 is one four Superfund sites in Glynn County, which has the unfortunate distinction of being the County with the highest number of Superfund sites in the State of Georgia.

As documented in numerous communications from local officials, state legislators, and the district's Congressman, which are attached as Exhibit A, OU1 and its sister sites have a strong deleterious effect on the economic and physical health of the citizens of Brunswick and Glynn County. The continued presence of toxaphene in the area of OU1 prevents meaningful use of the land, creates a negative perception of the local economy, threatens the health of the adjacent marsh ecosystems and the persons who boat and fish in them, and may pose a risk to the water supply. The City of Brunswick and Glynn County have strong economic and safety interests in ensuring that the contamination of OU1 is remediated in the most thorough and effective manner possible.

The City and the County have participated in this matter at every available opportunity. When the proposed plan for OU1 was identified in 2015, both the City and the County adopted and publicized resolutions opposing the plan during the public

comment period. [Ex. B and Ex. C]. After the IROD was published in 2017, the City and the County adopted a joint resolution in opposition, and also gained the support of numerous other officials and lawmakers. [Ex. A]. Unfortunately, the concerns of the City and the County – and those of the many other organizations that have joined in opposing both the IROD and the CD – have gone unanswered.

III.    **Statement of Facts**[2]

For over 30 years, from 1948 to 1980, Hercules produced toxaphene, a chlorinated pesticide, at its plant in Brunswick, Glynn County, Georgia, along a tidal saltwater creek that empties into a fragile saltmarsh ecosystem and an important estuary. During that time, Hercules discharged toxaphene and wastewater through an outfall ditch—OU1—into Dupree Creek, which flows into Terry Creek. Toxaphene accumulated in the sediments at the bottom of OU1 and the two tidal creeks and remains there today. In 1990, the United States banned toxaphene for all uses because of its toxicity and potential to cause cancer. Over time, fish species in the area have become so contaminated with toxaphene that they are too dangerous to eat.

The EPA and other federal and state agencies began investigating the Hercules site in the 1990s following the toxaphene ban. Upon realizing the extent and seriousness of the toxaphene contamination both onsite and offsite, the Hercules site was proposed for listing on the Superfund National Priorities List ("NPL") in 1997. The listing was

_____

[2]     Much of the Discussion section of this brief is adapted with express permission from the Public Comment provided by the Southern Environmental Law Center in response to the Consent Decree on September 20, 2018.

never finalized, however, so the site is treated as a Superfund Alternative Approach site, which follows the same standards and processes for cleanup as sites on the NPL under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Because of the size and complexity of the site, EPA has divided the site into three "operable units," or OUs. The first is OU1, the outfall ditch to Dupree Creek. OU2 consists of various upland portions of the site where dredged contaminated soils from Dupree and Terry Creeks were dumped in the 1970s and 1980s. OU3 consists of approximately 65 acres of Dupree and Terry Creeks near the site.

In 1990 and 2000, Hercules removed some of the contaminated soils from OU1 and OU3, but large amounts of toxaphene remain in all operable units and continue to cause problems. Fish surveys continue to show unacceptable levels of toxaphene in fish in the area. Education and outreach efforts have been ineffective to warn local fishermen about the dangers of eating fish in the area, causing many people to be exposed to toxaphene. And as discussed above, the damage from Hercules's characterization as a Superfund site reaches far beyond problems with local fish. The presence of a Superfund site along the important business corridor of U.S. 17 has contributed to a negative perception of the economic health of the area, and has harmed boating, fishing, and other recreational opportunities for residents, tourists, and businesses.

It is imperative that Hercules be held accountable for the damage it has caused and that it permanently and effectively remove the contamination. But the proposed

Consent Decree simply slaps Hercules on the wrist and allows the pesticide company to cover up the contamination, rather than remove it. Specifically, the Consent Decree would require Hercules to implement Alternative 4 (Concrete-Lined Channel Re-Routed with Limited Sediment Removal), the interim remedy selected in the June 2017 OU1 IROD. The details of that plan are discussed in the EPA's motion in support of the Consent Decree. [Dkt. 25, p.17]. In essence, the Consent Decree would allow Hercules to cover the toxaphene-contaminated site with clean soil, and to route runoff from the contaminated area into an open, concrete-lined ditch. By way of contrast, the remedy preferred by the vast majority of the officials, groups, organizations, and citizens who commented on the IROD and later the CD is complete removal of the contaminated soils and remediation of the area.

## IV.    Standard of Review

The Consent Decree is meant to resolve claims brought under CERCLA, 42 U.S.C. §§ 9601–9675. Congress enacted CERCLA in response to the serious environmental and health risks posed by industrial pollution. *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). The purpose of the Act is "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.* (quotations omitted). CERCLA's overarching principles include "accountability, the desirability of an unsullied environment, and promptness of response activities." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 91 (1st. Cir. 1990).

6

A consent decree in a CERCLA case must be "fair, reasonable, and faithful to the objective of the governing statute." *Id.* at 84; *see also Jones Creek Investors, LLC v. Columbia Cnty., Ga.,* 2013 WL 164516, *2 (S.D. Ga. 2013) (requiring consent decree to be lawful, reasonable, and consistent with environmental statute at issue). When "a court considers approval of a consent decree in a CERCLA case, there can be no easy-to-apply check list of relevant factors." *Cannons,* 899 F.2d at 86. Rather, "the evaluation of a consent decree's reasonableness will be a multifaceted exercise." *Id.* at 89.

## V.   Argument

Under CERCLA, nine criteria must be considered in selecting a remedy for a hazardous waste site. 40 C.F.R. § 300.430(f)(1)(I) (referring to paragraph (e)(9)(iii) criteria). Those criteria include the following:

- Overall protection of human health and the environment;
- Compliance with applicable or relevant and appropriate requirements ("ARARs") under federal environmental laws and state environmental or facility siting laws;
- Long-term effectiveness and permanence of the remedy;
- Reduction of toxicity, mobility, or volume through treatment;
- Short-term effectiveness of the remedy;
- Implementability of the remedy;
- Cost of the remedy;
- State acceptance; and
- Community acceptance.

*Id.* § 300.430(e)(9)(iii)(A)-(I).

Overall protection of human health and the environment and compliance with ARARs are threshold requirements that a chosen remedy must meet. *Id.* §300.430(f)(1)(I). The long-term effectiveness and permanence; reduction of toxicity, mobility, or volume

through treatment; short-term effectiveness; implementability; and cost are the balancing criteria. State acceptance and community acceptance are modifying criteria that also must be considered in remedy selection. *Id.*

Here, the remedy selected by the EPA and Hercules and set forth in the Consent Decree fails to satisfy most, if not all, of these factors, and thus should be rejected by the Court. Brunswick and Glynn County will address these factors in reverse order, ending with the most critical inquiry of overall protection of human health and the environment.

   A.    *The proposed remedy and the Consent Decree are strongly opposed by the community.*

The community has forcefully and soundly rejected the Consent Decree's selected interim remedy for OU1. The City of Brunswick, Glynn County, local environmental organizations, and individual community members all submitted written comments on the June 2015 proposed cleanup plan for OU1 of the Terry Creek Superfund Site and opposed the selection of Alternative 4. [Dkt. 3-3, pp. 307-482].  Those comments overwhelmingly expressed a desire for Hercules to remove all contaminated soils from the site, and also specifically requested the use of box culverts at OU1, rather than the open concrete culvert contemplated by Alternative 4, to aid in the redevelopment of the U.S. 17 Gateway Corridor and adjacent parcels.

EPA ignored the community's concerns and requests, however, and issued the June 2017 OU1 IROD selecting Alternative 4. In its response to the comments, EPA

asserted that the City of Brunswick and Glynn County were free to meet with Hercules to discuss potential reuse plans and to negotiate a change in ownership of OU1. [*Id.*, p. 131]. EPA noted that if Hercules agreed to sell, lease, provide an easement, or donate the OU1 parcel to the City or County, then it "may be able to design and implement the OU1 interim remedy to support the City's potential reuse plans, such as construction of a roadway." [*Id.*]. This response is absurd. Local governments should not be required to acquire and assume liability for contaminated property simply to convince EPA to select a remedy that meets the community's needs.

On September 18, 2018, following the issuance of the EPA's report on the toxicity of weathered toxaphene and toxaphene congeners, the Brunswick City Commission and Glynn County Board of Commissioners adopted a joint resolution opposing the Consent Decree. [Ex. A, pp. 4-6].  In that joint resolution, the City and County called for the complete removal and remediation of all contamination in OU1, based on the EPA's own new information regarding the alarming toxicity of weathered toxaphene. State Sen. William Ligon, who represents Glynn County, wrote in a separate statement, "I'm dismayed that the consent decree would fall short of requiring a complete removal and remediation of all the contamination. That is the only way to ensure the long-term viability of the site, and our water supply and our fisheries." [*Id.*, p. 13].  Similarly, the Brunswick-Golden Isles Chamber of Commerce, Brunswick and Glynn County Development Authority, and Golden Isles Convention and Visitors Bureau submitted a joint statement opposing entry of the Consent Decree and calling for the complete

9

removal of the contamination in OU1. [*Id.*, p. 23].

All told, the EPA received 101 comments in response to the Consent Decree. [Dkt. 25, p. 12]. One hundred of those comments – provided by the City and County, local organizations, environmental groups, and citizens – opposed the Consent Decree and the interim remedy suggested therein. [*Id.*]. Only one comment was made in support of the Consent Decree – from Hercules itself. [*Id.*]. The community overwhelmingly opposes entry of the Consent Decree and the selection of Alternative 4 as the interim remedy, and this factor thus cuts strongly against any finding that the remedy is proper. The Court should require that the EPA and Hercules find a solution that remedies the contamination in a manner acceptable to community members. See 40 C.F.R. § 300.430(e)(9)(iii)(I).

B.      *The remedy is not easily implementable, as the technology involved is not reliable.*

Under CERCLA regulations, the ease or difficulty of implementing a remedy must be assessed by considering technical feasibility, including "the reliability of the technology, ease of undertaking additional remedial actions, and the ability to monitor the effectiveness of the remedy." 40 C.F.R. § 300.430(e)(9)(iii)(F)(1).

The reliability of the technology to be used here is highly questionable, particularly given the site's location on the Georgia coast. Again, the interim remedy required by the Consent Decree would include re-routing the existing stormwater ditch into a newly constructed concrete-lined ditch; removal of the existing weir across the Outfall Ditch; placement of geotextile fabric over the contaminated sediment in the

10

Outfall Ditch; backfilling the Outfall Ditch with compacted clean soil over the fabric; armoring the backfill slope; seeding and stabilization of disturbed areas; and inspection, maintenance, and monitoring plans. Essentially, the plan is to cover up the contaminated soil and hope that it remains undisturbed.

This plan is completely unreliable on the Georgia coast, leading to serious concerns about implementability. Even a cursory examination of readily available data shows that the proposed site is already vulnerable to damage and flooding. According to geospatial models and reports from locals, this site and especially OU1 are already exposed to flooding from regular tides as well as "king tides."[3] During Hurricane Irma in 2017, storm surge flooded portions of the site, moving highly contaminated soils into nearby creeks, and damaging the underflow weir in OU1.[4] At the time, Irma had already been downgraded to a tropical storm, and the center of the storm was over 100 miles away. Even in the storm's weakened state, Irma's storm surge broke

---

[3]    King tides are exceptionally high tides that typically occur during a new or full moon and/or when the Moon is at its closest to Earth. https://oceanservice.noaa.gov/facts/kingtide.html.

[4]    Joshua Sharpe, *One Georgia Superfund Site Damaged by Irma; Others Under Review*, THE ATLANTA JOURNALCONSTITUTION, Sept. 19, 2017, https://www.ajc.com/news/local/one-georgia-superfund-site-damaged-irma-othersunder-review/8VFYQVdwJM9PeKW9ctxU1I/; Wes Wolfe, *Superfund Sites Receive Tentative Thumbs Up from EPA*, THE BRUNSWICK NEWS, Sept. 20, 2017, https://thebrunswicknews.com/news/local_news/superfund-sitesreceive-tentative-thumbs-up-from-epa/article_f4dcf8f2-5dff-5a00-b3d9-e1f2e2460da4.html.

Brunswick's 6.2 foot surge record set by Hurricane Matthew a year earlier.[5] In fact, the tide gauge in Brunswick broke while measuring Irma's storm surge at 6.9 feet over mean high tide. *Id.*

While the City of Brunswick and Glynn County suffered significant effects from both Hurricane Matthew in 2016 and Hurricane Irma in 2017, the area was fortunate in that both storms passed well offshore. However, there is no guarantee that future storms will similarly spare the area. The National Oceanic and Atmospheric Administration ("NOAA") has prepared National Storm Surge Maps that estimate how much storm surge could be expected in the event of future hurricanes. Examining this data for the Hercules site reveals that OU1 could be inundated with up to 6 feet of water in a Category 1 hurricane, and possibly more than 9 feet of water in a Category 3 hurricane.[6]

Overall, storm surges of that magnitude have the potential to completely undo the selected interim remedy by eroding vegetation and clean soils from the site, revealing the contaminated soils below, and causing them to enter Dupree Creek and eventually Terry Creek, exacerbating human health and environmental concerns. Simply armoring the backfill slope of the covered up soil will not prevent water from

---

[5]     Larry Hobbs, *Irma's Wrath Brings Floods, Wind Damage*, THE BRUNSWICK NEWS, Sept. 11, 2017, https://thebrunswicknews.com/news/local_news/irma-s-wrath-brings-floods-wind-damage/article_570de98c-fe78-54da-8fda-409b3237fcb0.html.

[6]     NOAA's National Storm Surge Hazard Maps can be found at http://noaa.maps.arcgis.com/apps/MapSeries/index.html?appid=d9ed7904dbec441a9c4dd7b277935fad&entry=1.

entering the site. And even if the geo-fabric cover and soils remain relatively undisturbed by storm surge, repeated flooding of OU1 could easily result in toxaphene and its breakdown products leaving the site as flood waters move in and out of the former ditch. Should the interim remedy be the only remedial action taken at the site for many years to come—which is likely, given Hercules's long history of delaying cleanup at this site—these concerns will only increase as sea levels rise and storms get stronger and more frequent.

In addition, the chosen interim remedy would make subsequent additional remedial actions much harder, raising more concerns about implementability. EPA notes in the IROD that Alternative 4 is not meant to be a final remedy at OU1, and that EPA will continue to develop final remedial alternatives for OU1. Given new information about "weathered toxaphene" and toxaphene breakdown products (discussed in much greater detail below), it is not far-fetched to assume that removal of contaminated soils may be required in the future at OU1. In that case, Hercules would have to completely reverse the Alternative 4 remedial action in order to access the contaminated soils.

Finally, implementing Alternative 4 at OU1 would be difficult due to the inability to monitor the effectiveness of the remedy. Historically, Hercules and EPA have monitored the contamination at the site by analyzing tissues in fish found in Dupree and Terry Creeks. The problem here, however, is that OU2 and OU3 both contain toxaphene-contaminated soils and sediments that could be contributing to the

13

fish contamination. In sum, the interim remedy could be completely reversed by a single storm event on the coast, would make a final remediation action more difficult, and would be difficult to monitor for effectiveness. For each of these reasons, it fails to meet the implementability criterion under the regulations, and this factor cuts against adoption of the Consent Decree. 40 C.F.R. § 300.430(e)(9)(iii)(F).

      C.     *The interim remedy does not reduce toxicity, mobility, or volume of the contaminated soils in OU1.*

     The explanation that has been given by EPA and Hercules as to why an interim remedy, rather than a final remedy, is desirable for OU1, is that EPA currently lacks a toxicity value for the breakdown products of toxaphene, which are referred to as degraded toxaphene, weathered toxaphene, or just breakdown products. As toxaphene breaks down naturally in the environment, it transforms into different toxaphene mixtures containing congeners with different numbers of chlorines. During the RI/FS process, EPA did not have toxicity information on those breakdown mixtures, or information about how harmful those breakdown products are. As a result, EPA allowed Hercules to perform the RI/FS to allow for an "expedited selection of a remedy at OU1 that is not further delayed by development of weathered toxaphene analytical measures or toxicity reference values." [Dkt. 3-3, p. 22]. However, because of Hercules's continued delay and inaction at the site, toxicity information on weathered toxaphene has become available during the pendency of this action.

     On July 31, 2018, EPA's National Center for Environmental Assessment

14

("NCEA") released the "Provisional Peer-Review Toxicity Values for Technical Toxaphene CASRN 8001-35-2, Weathered Toxaphene, and Toxaphene Congeners."[7] Accordingly, the purported reason for choosing an interim remedy no longer exists, and EPA and Hercules can select a final remedy, memorialized in a final record of decision, that adequately cleans the site and protects human health and the environment. In other words, there is no longer any need for an interim remedy, and Alternative 4 and thus the Consent Decree have become outdated and obsolete.

Moreover, the NCEA study demonstrates that the interim remedy is insufficient to protect human health and the environment, because toxaphene may become more toxic the longer it remains on site. Specifically, the longer toxaphene mixtures remain in the environment, the more likely they are to lose chlorines. The study recognizes that toxaphene mixtures enriched in congeners with less chlorines per molecule can be more toxic than toxaphene mixtures enriched in congeners with more chlorines per molecule.[8]  The toxaphene mixtures in OU1 have been in place since the late 1940s, which means that the toxaphene mixtures in OU1 may be much more toxic now than they originally were, as a result of losing chlorines over time.

Because the interim action would allow soils contaminated with weathered

---

[7]       Environmental Protection Agency, "Provisional Peer-Reviewed Toxicity Values for Technical Toxaphene (CASRN 8001-35-2) Weathered Toxaphene, and Toxaphene Congeners," (July 31, 2018) ["PPRTV for Weathered Toxaphene"], https://hhpprtv.ornl.gov/issue_papers/ToxapheneWeathered.pdf.

[8]       *Id.* at 82, 87–88 (focusing on the studies examining congeners with fewer than or greater than seven chlorines per molecule).

toxaphene to remain exactly where they are, there is a significant risk that those soils could become even more toxic over time. As a result, leaving those soils in place is unacceptable to protect human health and the environment, and this interim remedy is inconsistent with the reduction of toxicity through treatment criterion, 40 C.F.R. § 300.430(e)(9)(iii)(D).

Consideration of this factor provides two independently sufficient bases on which the Court should deny entry of the Consent Decree. The Decree, and the remedy it proposes, were drafted based on information that has become outdated during the pendency of this litigation. And the new information has changed the scientific understanding of weathered toxaphene, rendering the proposed remedy not only outdated, but dangerously insufficient. For this reason alone, the Court should deny entry of the Consent Decree and require the EPA and Hercules to negotiate a new agreement that accounts for the changed posture of the case and the most current scientific data.

D.    *The proposed remedy will not be effective in the long term.*

CERCLA requires that the proposed remedy be assessed for long-term effectiveness and permanence it affords, along with the degree of certainty that the remedy will prove successful. *Id.* § 300.430(e)(9(iii)(C). Moreover, "[e]ach remedial action shall utilize permanent solutions . . . to the maximum extent practicable." *Id.* § 300.430(f)(1)(ii)(E). In making this determination, "the modifying criteria of state acceptance and community acceptance . . . shall also be considered." *Id.*

16

As an initial matter, it is important to note, again, that the selected remedy in this case is presented as an interim remedy. According to EPA, the purpose of an interim action is to "take quick action to protect human health and the environment from an imminent threat in the short term, while a final remedial solution is being developed." But nothing about this process has been quick. Toxaphene actively accumulated on the site for over 30 years, and sat for an additional 20 years, before any contaminated soils were removed in 1999 and 2000. After that, it took Hercules and EPA another 16 years to decide on another interim remedy in the June 2017 IROD. And that interim remedy involves nothing more than covering up OU1 with dirt and building a separate ditch to channel wastewater and stormwater runoff. That action could have been taken—and should have been taken—in the early 2000s, when fish tissue studies continued to show detectable concentrations of toxaphene even after the sediment removal action in 1999 and 2000. Now, the interim action is nothing more than another delay tactic that will leave dangerous contaminants in the ground, posing an unnecessary risk to the community for years to come.

Hercules has a long history of delaying cleanup activities at the site, and it also insists that the interim remedy—Alternative 4—is adequate to contain the contamination and limit exposure. The majority of toxaphene-related cleanup activities at the Hercules site occurred between 1994 and 2000, a period of 6 years that ended over 18 years ago. Between 2000 and 2012, Hercules essentially did nothing to improve conditions at the site, even though it had agreed in 1999 to conduct the RI/FS for OU1.

Once it finally began conducting field studies for the RI/FS in 2012, Hercules argued for this limited interim cleanup measure, rather than a final solution to the contamination problem. This raises the concern that Hercules views Alternative 4 as a permanent solution to the problems posed by OU1, and has no intention to do any further remediation after completing the limited work associated with Alternative 4.

By allowing Hercules to implement this interim remedy instead of a final action that permanently and effectively protects human health and the environment, the United States is signaling to Hercules and other polluters that delay and avoidance will be rewarded with lenient consent decree terms. The Brunswick/Glynn County community deserves better. The interim action required by the Consent Decree is highly unlikely to be permanent or effective in the short term *or* the long term, due to current and future flooding and damage from storm surges and higher tides. In addition, as sea levels rise, the site's inundation risk will increase further, as will the potential for contaminants to spread to nearby areas through that flooding. Critically, toxaphene contamination remains in OU2 and OU3, and Hercules has essentially done nothing since 2000—interim or final—to remove or immobilize the contamination in those locations. See 40 C.F.R. § 300.430(e)(9)(iii)©.

E.    *The proposed remedy does not achieve overall protection of human health and the environment.*

The most important threshold criterion that a proposed remedy must meet is overall protection of human health and the environment. The selected remedy must

"adequately protect human health and the environment, in both the short- and long-term, from unacceptable risks posed by hazardous substances, pollutants, or contaminants present at the site by eliminating,reducing, or controlling exposures to levels establishing during development of remediation goals." 40 C.F.R. § 300.430(e)(9)(iii)(A). Overall protection of human health and the environment draws on the assessments of the other evaluation criteria. *Id.* As demonstrated by the analysis of the other evaluation criteria above, the interim remedy selected by the Consent Decree will not adequately protect human health and the environment from the unacceptable risks posed by toxaphene present in OU1. Covering up the contamination does not eliminate the risks, particularly when that cover could be removed easily by storm surges and wave action. Repeated flooding of the area could result in toxaphene migrating from the covered soils and into the neighboring tidal creeks even if the cover remains intact. As highlighted in the NCEA report on weathered toxaphene, the proposed interim remedy may actually result in toxaphene mixtures becoming more toxic over time. Those toxic mixtures may end up in seafood in even higher concentrations than are currently found, and may even contaminate the public water supply. The community strongly objected to this interim remedy when it was first proposed and continues to object to its inclusion in the Consent Decree.

The EPA should never have selected Alternative 4 as the interim remedy in the June 2017 IROD, because it is inconsistent with a majority of the regulatory criteria for selecting a remedy under CERCLA. And more importantly, EPA should not have asked

19

the Court to enter the Consent Decree setting forth that remedy after receiving information that changed the scientific understanding of the dangers posed by OU1 and removed any prior need to use an interim, rather than a permanent, remedy. The Consent Decree requires the implementation of a remedy that is unreasonable and inconsistent with CERCLA, as well as based on outdated information and procedural concerns that are no longer valid. Consequently, the Court should deny the pending motion to enter the Consent Decree, and require that the parties negotiate a new settlement that requires a final, effective, and permanent solution at OU1.

## VI.   Conclusion

For the foregoing reasons, the City of Brunswick and Glynn County as amici curiae respectfully request that the Court deny the pending motion to enter the Consent Decree.


Respectfully submitted, this fifteenth day of August, 2019.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830
rstrickland@brbcsw.com

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145
ehancock@brbcsw.com
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521

20

(912) 264-8544
(912) 264-9667 FAX
**ATTORNEYS FOR PETITIONERS CITY OF
BRUNSWICK AND GLYNN COUNTY**

/s/ Brian D. Corry
Brian D. Corry
Georgia Bar No. 165557
brian@corrylawllc.com
1612 Newcastle Street, Suite 211
Brunswick, Georgia 31520
(912) 215-0081
**ATTORNEY FOR PETITIONER CITY OF
BRUNSWICK**

/s/ Aaron W. Mumford
Aaron W. Mumford
Georgia Bar No. 529370
amumford@glynncounty-ga.gov
701 G Street, Second Floor
Historic Glynn County Courthouse
Brunswick, GA 31520
(912) 554-7470
**ATTORNEY FOR PETITIONER GLYNN
COUNTY**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this fifteenth day of August, 2019.

BROWN, READDICK, BUMGARTNER
CARTER, STRICKLAND & WATKINS, LLP

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar Number: 115145
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
ehancock@brbcsw.com
**ATTORNEY FOR PETITIONERS**

22

# EXHIBIT A

EARL L. "BUDDY" CARTER
FIRST DISTRICT OF GEORGIA

ENERGY AND COMMERCE COMMITTEE
SUBCOMMITTEE ON HEALTH
SUBCOMMITTEE ON ENVIRONMENT
SUBCOMMITTEE ON
OVERSIGHT AND INVESTIGATIONS

WASHINGTON OFFICE
432 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5831

SAVANNAH OFFICE
6602 ABERCORN STREET
SAVANNAH, GA 31405
(912) 352-0101

BRUNSWICK OFFICE
1510 NEWCASTLE STREET
BRUNSWICK, GA 31520
(912) 265-9010

http://BuddyCarter.House.gov

# Congress of the United States

## House of Representatives

### Washington, DC 20515-1001

September 26, 2018

Mr. Andrew Wheeler
Acting Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Dear Acting Administrator Wheeler,

In your role as the Acting Administrator of the EPA, you have a number of responsibilities and programs to oversee, including the Superfund program. I have the honor of serving on the Energy & Commerce Committee and in that role, I have asked questions about the Superfund program's progress, especially as it relates to timelines and remediation. One such site of interest is the Terry Creek/Hercules site in Brunswick, Georgia. This site, where chemicals were previously manufactured, is an important stretch of land and is extremely valuable to the local community's ability to develop. As such, I ask that you work with other federal partners, including the Department of Justice, to put forth a consent decree that is beneficial to all parties.

Last week, the Glynn County Board of Commissioners and the City of Brunswick passed a resolution opposing the consent decree and the proposed remedial action. That consent decree proposed an action to clean up the contaminated materials and store them on site, rather than remove and dispose of them at a different location. It is a difficult task pursuing economic development opportunities, and to have to market a property with contaminated materials only makes it more difficult. While the Department of Justice has a leading role in the recently released consent decree, I urge you to work with them to consider the thoughts and needs of the local communities and to put forth a solution that accounts for those.

The Superfund program plays an important role in cleaning up our communities and providing new opportunities where they weren't possible before remediation. Working with the local communities will help to further the role of the program while utilizing the input of those will be most impacted by those decisions. Thank you for your continued service to our country's environmental cleanup needs, especially as they relate to issues we're facing in the First Congressional District of Georgia. Please don't hesitate to reach out to my office if you need any additional information.

Sincerely,

Earl L. 'Buddy' Carter
Member of Congress

# CITY OF BRUNSWICK

601 Gloucester Street * Post Office Box 550 * Brunswick * Georgia * 31520-0550 * (912) 267-5500 * Fax (912) 267-5549

Cornell L. Harvey, Mayor
Felicia M. Harris, Mayor Pro Tem
John A. Cason III, Commissioner
Julie T. Martin, Commissioner
Vincent T. Williams, Commissioner

City Attorney
Brian D. Corry

City Manager
James D. Drumm

September 19, 2018

**Via Electronic Mail: pubcomment-ees.enrd@usdoj.gov**

Assistant Attorney General
U.S.DOJ – ENRD
P.O. Box 7611
Washington, D.C. 20044-7611

**Re:    United States v. Hercules, LLC, D.J. Ref. No. 90 – 11 – 3 – 11685**

To Whom It May Concern:

The Mayor and City Commission of the City of Brunswick, Georgia hereby submit this letter and the Joint Resolution enclosed as formal comments concerning the proposed Consent Decree for the Terry Creek Outfall Ditch Operable Unit One filed in the above referenced matter. The City of Brunswick and Glynn County approved and executed the Joint Resolution Opposing the Consent Decree unanimously during the joint work session on September 18, 2018.

The City of Brunswick and Glynn County are unfortunately home to multiple hazardous sites in various stages of remediation or closure. As a result, the Board of Commissioners of the City of Brunswick pay close attention to issues related to the cleanup of these sites and how it can best be done to benefit residents of the City and County as well as those seeking to visit the unique natural resources found in the area.

The resolution has been shared with the members of the United States Congress and members of the Local Legislative Delegation to the Georgia General Assembly representing the City of Brunswick and Glynn County. Several attended the Joint Work Session and voiced their support for the approval of the Joint Resolution. On behalf of the Board of Commissioners and citizens of the City of Brunswick, I hope this resolution demonstrates the dedication of our entire community in making sure the contamination located at the Terry Creek site is completely removed and the area undergoes a complete and thorough remediation.

Page 2 - Assistant Attorney General

Thank you for your time.

Sincerely,

Cornell L. Harvey
Mayor
City of Brunswick

xc: City of Brunswick Board of Commissioners
Glynn County Board of Commissioners
Scott Martin, U.S. Environmental Protection Agency (via email: martin.scott@epa.gov )
Tanya Floyd, U.S. Environmental Protection Agency (via email: floyd.tanya@epa.gov )

Exhibit 1 Page 76

**A JOINT RESOLUTION OF THE CITY OF BRUNSWICK, GEORGIA AND GLYNN COUNTY, GEORGIA OPPOSING THE PROPOSED CONSENT DECREE FOR OPERABLE UNIT ONE OF THE TERRY CREEK SUPERFUND SITE DREDGE SPOILS AREA AND CALLING FOR THE COMPLETE REMOVAL OF ALL CONTAMINATION IN OPERABLE UNIT ONE; URGING THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND U.S. DEPARTMENT OF JUSTICE TO RECONSIDER THE SELECTED REMEDIAL ACTION SET FORTH IN THE CONSENT DECREE AND TO WITHDRAW AND/OR AMEND THE PROPOSED CONSENT DECREE TO REQUIRE THE COMPLETE REMOVAL OF ALL CONTAMINATION; AND REQUESTING THAT THE MEMBERS OF THE UNITED STATES CONGRESS AND THE GEORGIA GENERAL ASSEMBLY REPRESENTING THE CITY OF BRUNSWICK AND GLYNN COUNTY OPPOSE THE REMEDIAL ACTION SET FORTH IN THE CONSENT DECREE FOR OPERABLE UNIT ONE AND URGE THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND U.S. DEPARTMENT OF JUSTICE TO WITHDRAW AND/OR AMEND THE PROPOSED CONSENT DECREE TO REQUIRE THE COMPLETE REMOVAL OF ALL CONTAMINATION; AND FOR OTHER PURPOSES.**

**WHEREAS,** U.S. 17 is a primary arterial thoroughfare in Brunswick, Georgia that connects Jekyll and St. Simons Islands to the mainland of Brunswick and Glynn County and is part of the highway system linking Brunswick to neighboring counties to the north and south; and,

**WHEREAS,** U.S. 17 is an important component to the economic health of Brunswick and Glynn County; and,

**WHEREAS,** U.S. 17 has been designated a gateway corridor; and,

**WHEREAS,** Glynn County and the City of Brunswick are home to a vast ecosystem of saltwater marshes, creeks and rivers which generate economic benefits to the area and are considered vital assets to the local community; and

**WHEREAS,** Hercules Terry Creek Outfall Ditch Operable Unit One is adjacent to the vital corridor of U.S. 17 and releases contamination into Terry Creek, a part of the communities' fragile ecosystem; and,

**WHEREAS,** based on the National Priorities List and the proposed addition of Terry Creek to the list, four (4) Superfund sites are located in Glynn County, making Glynn County home to the most Superfund sites in a single county in the State of Georgia; and,

**WHEREAS,** the location of multiple hazardous waste sites located in Glynn County and the City of Brunswick creates a negative perception of the area economic health while also

Exhibit 1                                                                                                    Page 77

threatening the promotion of the areas access for boating, fishing and/or other recreational activities; and,

**WHEREAS,** contamination of Operable Unit One is detrimental to the revitalization of the U.S. 17 corridor and poses a serious threat to the saltwater ecosystem; and,

**WHEREAS,** in 2015, the U.S. Environmental Protection Agency Region IV outlined several options for the remediation of Operable Unit One; and,

**WHEREAS,** in September of 2015, the Governing Boards of the City of Brunswick and Glynn County respectively passed resolutions urging the selection of the remedial option that would cause the complete removal of all contamination from the Terry Creek Outfall ditch because the City of Brunswick and Glynn County believe that complete remediation is necessary for the redevelopment of the U.S. 17 Gateway Corridor to occur; and,

**WHEREAS,** on May 16, 2018, the United States Department of Justice lodged a proposed consent decree with the United States District Court for the Southern District of Georgia in the lawsuit entitled United States v. Hercules LLC, Civil Action No. 2:18-cv-00062-LGW-RSB; and,

**WHEREAS,** the proposed consent decree would require defendant Hercules LLC to implement the interim remedy selected by the U.S. Environmental Protection Agency for the outfall, known as Operable Unit One, of the Terry Creek Dredge Spoil Areas/Hercules Outfall Site in Brunswick, in Glynn County, Georgia; and,

**WHEREAS,** the City of Brunswick and Glynn County believe the Consent Decree for the Terry Creek Outfall Ditch Operable Unit One should be withdrawn and/or amended to account for recent changes in the manner of testing and/or detecting the toxicity of Toxaphene, the contaminate prominently found at the Terry Creek site; and,

**WHEREAS,** the City of Brunswick and Glynn County believe the new information related to Toxaphene demonstrates the dire need for the complete removal and remediation of all contamination to ensure the prevention of future contamination at the site; and,

**WHEREAS,** the City of Brunswick and Glynn County do not believe that the proposed Consent Decree goes far enough to fully remove and remediate the contaminants in Operable Unit One;

**NOW, THEREFORE, BE IT RESOLVED** by the Mayor and Board of Commissioners, acting in its capacity as the governing authority of the City of Brunswick, and by the Glynn County Board of Commissioners, acting in its capacity as the governing authority of Glynn County, that it be known that they oppose the proposed Consent Decree for the Terry Creek Operable Unit One and call for the Consent Decree to be withdrawn and/or amended to require the complete removal of all contamination in the soil and groundwater of Operable Unit One and

Exhibit 1      Page 78

**BE IT FURTHER RESOLVED** by the City of Brunswick and Glynn County that the United States Department of Justice and United States Environmental Protection Agency be and is hereby urged by copy of this Resolution to reconsider the remedial action set forth in the proposed Consent Decree and to withdraw and/or amend the proposed Consent Decree to require the complete removal of all contamination in the soil and groundwater of Operable Unit One; and

**BE IT FURTHER RESOLVED** by the City of Brunswick and Glynn County that members of the United States Congress and members of the Local Legislative Delegation to the Georgia General Assembly representing the City of Brunswick and Glynn County be and are hereby requested by copy of this resolution to oppose the remedial action set forth in the Consent Decree and urge the United States Environmental Protection Agency and the United States Department of Justice to support the withdrawal and/or amendment of the Consent Decree to require the complete removal of all contamination in Operable Unit One.

This Resolution shall be effective immediately upon adoption.

ADOPTED by the Commission of the City of Brunswick this 18th day of September, 2018.

**CITY OF BRUNSWICK, GEORGIA**

By
CORNELL L. HARVEY, MAYOR
CITY OF BRUNSWICK, GEORGIA

ATTEST: Naomi Atkinson, City Clerk

ADOPTED by the Glynn County Board of Commissioners this 18th day of September, 2018.

**GLYNN COUNTY, GEORGIA:**

By:
BILL BRUNSON, CHAIRMAN
GLYNN COUNTY BOARD OF COMMISSIONERS

ATTEST: Dhwani Patel, County Clerk

Exhibit 1                                                                                      Page 79

| | |
|---|---|
| **From:** | Aaron Mumford |
| **To:** | ENRD, PUBCOMMENT-EES (ENRD) |
| **Cc:** | martin.scott@epa.gov; "floyd.tanya@epa.gov"; Brown, Jim; Board of Commissioners List; CORNELL HARVEY; Felicia Harris; Vincent Williams; Julie Martin; Johnny Cason; Sen. William Ligon; "jeff@votejefflones.com"; don.hogan@house.ga.gov; woodyw@bgicoc.com; Scott McQuade (scott@goldenisles.com); ryanmoore@bwkeda.com; "Brian@williamslg.com"; Kathryn Downs; Dhwani Patel |
| **Subject:** | United States v. Hercules, LLC, D.J. Ref. No. 90–11–3–11685 (Proposed Consent Decree / Operable Unit 1 - Terry Creek Superfund Site Dredge Spoils Area) |
| **Date:** | Wednesday, September 19, 2018 2:25:52 PM |
| **Attachments:** | image001.png<br>091918 Letter USDOJ re U.S. v. Hercules - D.J. Ref. No. 90-11-3-11685.pdf |

Assistant Attorney General
U.S. DOJ—ENRD
Washington, DC
pubcomment-ees.enrd@usdoj.gov

RE:      **United States v. Hercules, LLC, D.J. Ref. No. 90–11–3–11685 (Proposed Consent Decree / Operable Unit 1 - Terry Creek Superfund Site Dredge Spoils Area)**

Assistant Attorney General:

Attached hereto please find a *Joint Resolution of the City of Brunswick, Georgia, and Glynn County, Georgia*, pertaining to the proposed consent decree for Operable Unit 1 of the Terry Creek Superfund Site Dredge Spoils Area, which was adopted by the governing authorities of both the City of Brunswick and Glynn County at a joint meeting held on September 18, 2018. This joint resolution opposes the proposed consent decree for Operable Unit 1 of the Terry Creek Superfund Site Dredge Spoils Area and calls for the complete removal of all contamination in Operable Unit 1. It also urges the United States Department of Justice and United States Environmental Protection Agency to reconsider the remedial action set forth in the proposed Consent Decree and to withdraw and/or amend the proposed Consent Decree to require the complete removal of all contamination in the soil and groundwater of Operable Unit One.

The attachment also includes for your records copies of letters received in this matter from Glynn County's local legislative delegation to the Georgia General Assembly, as well as a resolution from the Glynn County Board of Health and a joint letter from the Brunswick and Glynn County Development Authority, Brunswick-Golden Isles Chamber of Commerce, and Golden Isles Convention and Visitors Bureau.

Thank you for your consideration of the *Joint Resolution of the City of Brunswick, Georgia, and Glynn County, Georgia*, and the accompanying materials. If you have any questions about these materials, or if I can be of any further assistance in this matter, please do not hesitate to let me know.

Sincerely,
Aaron W. Mumford
County Attorney
Glynn County, Georgia
701 "G" Street, 2nd Floor
Brunswick, Georgia 31520
Office: (912) 554-7470
Fax: (912) 554-7597
amumford@glynncounty-ga.gov

Confidentiality Notice: This message is confidential, intended only for the named recipient(s), and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you are not the intended recipient(s), or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use this message, or any portion thereof. If you received this message in error, or are not the named recipient(s), please notify the sender immediately and delete the original message that you received. Receipt by anyone other than the named recipient(s) is not a waiver of any attorney-client, work product, or other applicable privilege. Thank you.

Exhibit 1                                    Page 80



Exhibit 1                                                    Page 81



# GLYNN COUNTY ATTORNEY

701 "G" Street, Second Floor, Historic Courthouse Brunswick, Georgia 31520
Phone: 912-554-7470 Fax: 912-554-7597

*A Golden Past.*
*A Shining Future.*

**VIA EMAIL TO: pubcomment-ees.enrd@usdoj.gov**
**HARD COPY TO FOLLOW VIA U.S. MAIL**

September 19, 2018

Assistant Attorney General
U.S. DOJ—ENRD
P.O. Box 7611
Washington, DC
20044–7611

RE:     ***United States* v. *Hercules, LLC*, D.J. Ref. No. 90–11–3–11685**

**JOINT RESOLUTION OF THE CITY OF BRUNSWICK, GEORGIA AND GLYNN COUNTY, GEORGIA, REGARDING THE PROPOSED CONSENT DECREE FOR OPERABLE UNIT 1 OF THE TERRY CREEK SUPERFUND SITE DREDGE SPOILS AREA**

Assistant Attorney General:

Attached hereto please find a *Joint Resolution of the City of Brunswick, Georgia, and Glynn County, Georgia*, pertaining to the proposed consent decree for Operable Unit 1 of the Terry Creek Superfund Site Dredge Spoils Area, which was adopted by the governing authorities of both the City of Brunswick and Glynn County at a joint meeting held on September 18, 2018. This joint resolution opposes the proposed consent decree for Operable Unit 1 of the Terry Creek Superfund Site Dredge Spoils Area and calls for the complete removal of all contamination in Operable Unit 1. It also urges the United States Department of Justice and United States Environmental Protection Agency to reconsider the remedial action set forth in the proposed Consent Decree and to withdraw and/or amend the proposed Consent Decree to require the complete removal of all contamination in the soil and groundwater of Operable Unit One. I am also attaching for your records copies of letters received in this matter from Glynn County's local legislative delegation to the Georgia General Assembly, as well as a resolution from the Glynn County Board of Health and a joint letter from the Brunswick and Glynn County Development Authority, Brunswick-Golden Isles Chamber of Commerce, and Golden Isles Convention and Visitors Bureau.

Thank you for your kind consideration of same. Should you have any questions, or if I may be of any further assistance, please do not hesitate to let me know.

Sincerely,

Aaron W. Mumford
Glynn County Attorney

Attachments
c:     Glynn County Board of Commissioners (via email)
       City of Brunswick Board of Commissioners (via email)
       Scott Martin, U.S. Environmental Protection Agency (via email)
       Tanya Floyd, U.S. Environmental Protection Agency (via email)
       Jim Brown, Georgia Department of Natural Resources, Environmental Protection Division (via email)

Exhibit 3 — Page 32

A JOINT RESOLUTION OF THE CITY OF BRUNSWICK, GEORGIA AND GLYNN COUNTY, GEORGIA OPPOSING THE PROPOSED CONSENT DECREE FOR OPERABLE UNIT ONE OF THE TERRY CREEK SUPERFUND SITE DREDGE SPOILS AREA AND CALLING FOR THE COMPLETE REMOVAL OF ALL CONTAMINATION IN OPERABLE UNIT ONE; URGING THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND U.S. DEPARTMENT OF JUSTICE TO RECONSIDER THE SELECTED REMEDIAL ACTION SET FORTH IN THE CONSENT DECREE AND TO WITHDRAW AND/OR AMEND THE PROPOSED CONSENT DECREE TO REQUIRE THE COMPLETE REMOVAL OF ALL CONTAMINATION; AND REQUESTING THAT THE MEMBERS OF THE UNITED STATES CONGRESS AND THE GEORGIA GENERAL ASSEMBLY REPRESENTING THE CITY OF BRUNSWICK AND GLYNN COUNTY OPPOSE THE REMEDIAL ACTION SET FORTH IN THE CONSENT DECREE FOR OPERABLE UNIT ONE AND URGE THE U.S. ENVIRONMENTAL PROTECTION AGENCY AND U.S. DEPARTMENT OF JUSTICE TO WITHDRAW AND/OR AMEND THE PROPOSED CONSENT DECREE TO REQUIRE THE COMPLETE REMOVAL OF ALL CONTAMINATION; AND FOR OTHER PURPOSES.

**WHEREAS,** U.S. 17 is a primary arterial thoroughfare in Brunswick, Georgia that connects Jekyll and St. Simons Islands to the mainland of Brunswick and Glynn County and is part of the highway system linking Brunswick to neighboring counties to the north and south; and,

**WHEREAS,** U.S. 17 is an important component to the economic health of Brunswick and Glynn County; and,

**WHEREAS,** U.S. 17 has been designated a gateway corridor; and,

**WHEREAS,** Glynn County and the City of Brunswick are home to a vast ecosystem of saltwater marshes, creeks and rivers which generate economic benefits to the area and are considered vital assets to the local community; and

**WHEREAS,** Hercules Terry Creek Outfall Ditch Operable Unit One is adjacent to the vital corridor of U.S. 17 and releases contamination into Terry Creek, a part of the communities' fragile ecosystem; and,

**WHEREAS,** based on the National Priorities List and the proposed addition of Terry Creek to the list, four (4) Superfund sites are located in Glynn County, making Glynn County home to the most Superfund sites in a single county in the State of Georgia; and,

**WHEREAS,** the location of multiple hazardous waste sites located in Glynn County and the City of Brunswick creates a negative perception of the area economic health while also

Exhibit 1                                                                 Page 83

threatening the promotion of the areas access for boating, fishing and/or other recreational activities; and,

**WHEREAS,** contamination of Operable Unit One is detrimental to the revitalization of the U.S. 17 corridor and poses a serious threat to the saltwater ecosystem; and,

**WHEREAS,** in 2015, the U.S. Environmental Protection Agency Region IV outlined several options for the remediation of Operable Unit One; and,

**WHEREAS,** in September of 2015, the Governing Boards of the City of Brunswick and Glynn County respectively passed resolutions urging the selection of the remedial option that would cause the complete removal of all contamination from the Terry Creek Outfall ditch because the City of Brunswick and Glynn County believe that complete remediation is necessary for the redevelopment of the U.S. 17 Gateway Corridor to occur; and,

**WHEREAS,** on May 16, 2018, the United States Department of Justice lodged a proposed consent decree with the United States District Court for the Southern District of Georgia in the lawsuit entitled United States v. Hercules LLC, Civil Action No. 2:18–cv–00062–LGW–RSB; and,

**WHEREAS,** the proposed consent decree would require defendant Hercules LLC to implement the interim remedy selected by the U.S. Environmental Protection Agency for the outfall, known as Operable Unit One, of the Terry Creek Dredge Spoil Areas/Hercules Outfall Site in Brunswick, in Glynn County, Georgia; and,

**WHEREAS,** the City of Brunswick and Glynn County believe the Consent Decree for the Terry Creek Outfall Ditch Operable Unit One should be withdrawn and/or amended to account for recent changes in the manner of testing and/or detecting the toxicity of Toxaphene, the contaminate prominently found at the Terry Creek site; and,

**WHEREAS,** the City of Brunswick and Glynn County believe the new information related to Toxaphene demonstrates the dire need for the complete removal and remediation of all contamination to ensure the prevention of future contamination at the site; and,

**WHEREAS,** the City of Brunswick and Glynn County do not believe that the proposed Consent Decree goes far enough to fully remove and remediate the contaminants in Operable Unit One;

**NOW, THEREFORE, BE IT RESOLVED** by the Mayor and Board of Commissioners, acting in its capacity as the governing authority of the City of Brunswick, and by the Glynn County Board of Commissioners, acting in its capacity as the governing authority of Glynn County, that it be known that they oppose the proposed Consent Decree for the Terry Creek Operable Unit One and call for the Consent Decree to be withdrawn and/or amended to require the complete removal of all contamination in the soil and groundwater of Operable Unit One and

Exhibit 1                                                                                                    Page 84

**BE IT FURTHER RESOLVED** by the City of Brunswick and Glynn County that the United States Department of Justice and United States Environmental Protection Agency be and is hereby urged by copy of this Resolution to reconsider the remedial action set forth in the proposed Consent Decree and to withdraw and/or amend the proposed Consent Decree to require the complete removal of all contamination in the soil and groundwater of Operable Unit One; and

**BE IT FURTHER RESOLVED** by the City of Brunswick and Glynn County that members of the United States Congress and members of the Local Legislative Delegation to the Georgia General Assembly representing the City of Brunswick and Glynn County be and are hereby requested by copy of this resolution to oppose the remedial action set forth in the Consent Decree and urge the United States Environmental Protection Agency and the United States Department of Justice to support the withdrawal and/or amendment of the Consent Decree to require the complete removal of all contamination in Operable Unit One.

This Resolution shall be effective immediately upon adoption.

ADOPTED by the Commission of the City of Brunswick this 18th day of September, 2018.

**CITY OF BRUNSWICK, GEORGIA**

By: _____
CORNELL L. HARVEY, MAYOR
CITY OF BRUNSWICK, GEORGIA

ATTEST: Naomi Atkinson, City Clerk

ADOPTED by the Glynn County Board of Commissioners this 18th day of September, 2018.

**GLYNN COUNTY, GEORGIA:**

By: _____
BILL BRUNSON, CHAIRMAN
GLYNN COUNTY BOARD OF COMMISSIONERS

ATTEST: Dhwani Patel, County Clerk

Exhibit 1                                    Page 85

**William Ligon**
District 3
158 Scranton Connector
Brunswick, Georgia 31525
Office: 912.261.2263
Email: william@senatorligon.com

121-E State Capitol
Atlanta, Georgia 30334
Phone: 404.463.1383

William.Ligon@senate.ga.gov



**Georgia Senate**

**Committees**

Banking and Financial Institutions, Chairman
Ethics, Vice Chairman
Reapportionment and Redistricting,
Vice Chairman
Appropriations
Health and Human Services
Judiciary

Mr. Bill Brunson, Chairman
Glynn County Board of Commissioners
Harold Pate Building
1725 Reynolds Street
Brunswick, GA 31520

Dear Chairman Brunson:

As the State Senator of the Third District of Georgia, I write to affirm the concerns of the Glynn County Board of Commissioners and the Commission of the City of Brunswick regarding the proposed Consent Decree for Operable Unit 1 of the Terry Creek Superfund Site dredge spoils area. I agree that the Environmental Protection Agency and the U.S. Department of Justice should withdraw or amend the proposed May 16, 2018, Consent Decree lodged with the United States District Court for the Southern District of Georgia in the lawsuit entitled *United States v. Hercules LLC, Civil Action* No. 2:18-cv-00062-LGW-RSB.

As you have made clear in the resolution, our community suffers from the mismanagement of a large land area on our economic corridor in several ways. It is an eyesore for our tourists who travel to visit St. Simons Island, Jekyll Island, and Sea Island. It ties up valuable real estate that could add to our tax digest. The soil contaminates, such as toxaphene, are located next to our valuable marshes which are nurseries for our fisheries. Furthermore, these contaminates are situated above our pristine Floridan Aquifer and could pose a future risk to our water supply.

I am dismayed that the Consent Decree would fall short of requiring a complete removal and remediation of all the contamination. That is the only way to ensure the long-term viability of the site, our water supply, and our fisheries. I heartily commend you and the Board of Commissioners as well as Brunswick Mayor Cornell Harvey and the Commissioners of the City of Brunswick for your proactive efforts to protect our environment. It is my hope that the Environmental Protection Agency and the U.S. Department of Justice will heed the wisdom of locally elected officials.

Exhibit 1                    Page 86

Page 2

Sincerely,

William Ligon
Senator of the Third District of Georgia
cc: Mayor Cornell Harvey of the City of Brunswick

Exhibit 1      Page 87



# House of Representatives
**Coverdell Legislative Office Building**
**18 Capitol Square SW, Atlanta, GA 30334**

September 19, 2018

United States Environmental Protection Agency
Assistant Attorney General
U. S. DOJ – ENRD (Environmental Resources Div.)
P. O. Box 7611
Washington, DC 20044

VIA EMAIL: pubcomment-ees.enrd@usdoj.gov
and U. S. Mail

Ref:    United States v. Hercules, LLC; DJ Ref Nos. 90-11-3-11685

Dear Sir/Madam:

As the Georgia State Representatives for Districts 167 and 179, representing Glynn County and other portions of coastal Georgia, we write to affirm the concerns of the Glynn County Board of Commissioners, the Commission of the City of Brunswick, and the DPH Coastal Health District regarding the unacceptable proposed Consent Decree for "Operable Unit 1" of the Terry Creek Superfund Site dredge spoils area. We agree and request that the Environmental Protection Agency and the U.S. Department of Justice withdraw or amend the proposed May 16, 2018 Consent Decree lodged with the United States District Court for the Southern District of Georgia in the lawsuit entitled United States v. Hercules LLC, Civil Action No. 2:18-cv-00062-LGW-RSB.

As the Brunswick City and Glynn County Commissions made clear in their resolution, our community suffers from the mismanagement of a large land area in a key economic corridor for Glynn County in several ways. The soil contaminates, such as toxaphene, are located next to our valuable marshes which are nurseries for our fisheries and other wildlife. The soil contaminates are situated above our pristine Floridan Aquifer and could pose a future risk to our pristine water supply.

The site is an eyesore for our tourists who travel to visit St. Simons Island, Jekyll Island, and Sea Island. Tourism is an important industry that brings income and provides vital jobs to our community. The site also ties up valuable real estate that could add to our tax digest.

We are dismayed that the Consent Decree would fall short of requiring a complete removal and remediation of all the contamination. That is the only way to ensure the long-term viability of the site, our water supply, and our fisheries. We heartily commend the actions of the Glynn County Board of Commissioners as well as Brunswick Mayor Cornell Harvey and the Commissioners of the City of Brunswick for their proactive efforts to protect our environment.

It is our sincere hope that the Environmental Protection Agency and the U.S. Department of Justice will heed the wisdom of our locally elected officials.

Sincerely,

Don Hogan, District 179                                    Jeff Jones, District 167

Cc:    Glynn County Board of Commissioners
        Brunswick City Commission

Exhibit 1                                                      Page 88



Lawton C. Davis, M.D., District Health Director

**Georgia Department of Public Health**

**Glynn County
Health Department**

2747 Fourth Street
Brunswick, Georgia 31520
Phone: 912-264-3961 | Fax: 912-265-8837

**WHEREAS,** Hercules Terry Creek Outfall Ditch Operative Unit One is adjacent to US Highway 17 in Glynn County, Georgia; and

WHEREAS US Highway 17 is a major artery and prime region for development and thus an important component to the economic health of Brunswick and Glynn County; and,

WHEREAS Hercules Terry Creek Outfall Ditch Operative Unit One has been determined to be heavily contaminated with Toxaphene (among other contaminants); and

WHEREAS Toxaphene is known to be harmful to animals and humans to an extent that its use has been banned in the United States since 1990, and banned worldwide since 2001; and

WHEREAS the Glynn County Board of Health is charged to exercise responsibility and authority in all matters within the county pertaining to health unless the responsibility for enforcement of such is by law that of another agency; take such steps as may be necessary to prevent and suppress disease and conditions deleterious to health and to determine compliance with health laws and rules, regulations, and standards adopted thereunder [O.C.G.A 31-3-4(2)(3)];

WHEREAS there is a proposal to allow that the Terry Creek Outfall Ditch Operative Unit One simply be filled / covered, thus allowing for the continued leeching of contaminants into ground water and adjacent tidal creeks thus creating potential exposure for humans as well as fish and crustaceans which may be consumed by humans;

NOW THEREFORE BE IT HEREBY RESOLVED BY THE GLYNN COUNTY BOARD OF HEALTH to support the resolution by the Glynn County Commission and City of Brunswick opposing the proposed Consent Decree for the Terry Creek Operable Unit One and calling for the Consent Decree to be withdrawn and/or amended to require the complete removal of all contamination in the soil and groundwater of Operable Unit One; and

Furthermore that the Glynn County Board of Health calls upon United States Department of Justice and United States Environmental Protection Agency to reconsider the remedial action set forth in the proposed Consent Decree and to withdraw and/or amend the proposed Consent



Decree to require the complete removal of all contamination in the soil and groundwater of Operable Unit One; and

Furthermore that the Glynn County Board of Health supports the City of Brunswick and Glynn County in requesting that members of the United States Congress and members of the Local Legislative Delegation to the Georgia General Assembly representing the City of Brunswick and Glynn County strenuously oppose the remedial action set forth in the Consent Decree and urge the United States Environmental Protection Agency and the United States Department of Justice to support the withdrawal and/or amendment of the Consent Decree to require the complete removal of all contamination in Operable Unit One.

_____
Lawton C. Davis, M.D.
Glynn County Board of Health, CEO
District Health Director

_____
Deborah Riner, C.Ht
Glynn County Board of Health, Chairman

September 17, 2018

BRUNSWICK & GLYNN COUNTY DEVELOPMENT AUTHORITY

BRUNSWICK - GOLDEN ISLES CHAMBER OF COMMERCE

GOLDEN ISLES CONVENTION & VISITORS BUREAU

September 19, 2018

Assistant Attorney General, U.S.
DOJ—ENRD, P. O. Box 7611
Washington, DC 20044-7611

Re: Comment on Proposed Consent Decree; United States of America v. Hercules, LLC, Civil Action No. 2:18-cv-00062-LGW-RSB

Dear Sir/Madam:

The Brunswick and Glynn County Development Authority, Brunswick-Golden Isles Chamber of Commerce, and the Golden Isles Convention and Visitors Bureau (the Group) are writing this as our comment to the proposed Consent Decree in United States of America v. Hercules LLC, pending in the United States District Court for the Southern District of Georgia, Brunswick Division, Civil Action No. 2:18-cv-00062-LGW-RSB, in Glynn County. It is our understanding that there are no other options upon which to comment at this time. We have adopted the Shared Vision for the Brunswick and Golden Isles for "Working together to make Brunswick and the Golden Isles an exceptional place in Georgia to live, work, and visit by strengthening our communities and enhancing the quality of life".

We acknowledge not only the EPA's consideration for the environment in this matter, but also for the health and welfare of the community. As mentioned in the Joint Resolution of the City of Brunswick, Georgia and Glynn County, Georgia regarding the Consent Decree, the Highway 17 Corridor is identified as a gateway corridor that is vital to the economic health of the community; we contend that sufficient remediation of the site is necessary for the long-term health and welfare of our community.

We are frustrated by the length of time it has taken to reach a resolution of this matter and our preferred method of mitigation is Alternative 2, complete removal and remediation of the sediment, a resolution which will be satisfactory to the Group. We want and expect this issue to be resolved in the best long-term interest of this community through the joint work of the Court System, Hercules, and the EPA. We also understand that any resolution of the short-term or long-term environmental issues will be at no cost to the taxpayers of Glynn County.

Additionally, we urge the EPA and Hercules to determine an aggressive and accountable timeline for development and implementation of plans related to OU2 and OU3.

Thank you for your consideration.

Brunswick and Glynn County Development Authority
By:_____
    Ryan Moore, President

Brunswick-Golden Isles Chamber of Commerce
By:_____
    M. H. "Woody" Woodside, President

Golden Isles Convention and Visitors Bureau
By:_____
    Scott McQuade, President

*House of Representatives*

Coverdell Legislative Office Building
18 Capitol Square SW, Atlanta, GA 30334

SEP 24 P 2:48

September 19, 2018

United States Environmental Protection Agency
Assistant Attorney General
U. S. DOJ – ENRD (Environmental Resources Div.)
P. O. Box 7611
Washington, DC 20044

VIA EMAIL: pubcomment-ees.enrd@usdoj.gov
and U. S. Mail

Ref:    United States v. Hercules, LLC; DJ Ref Nos. 90-11-3-11685

Dear Sir/Madam:

As the Georgia State Representatives for Districts 167 and 179, representing Glynn County and other portions of coastal Georgia, we write to affirm the concerns of the Glynn County Board of Commissioners, the Commission of the City of Brunswick, and the DPH Coastal Health District regarding the unacceptable proposed Consent Decree for "Operable Unit 1" of the Terry Creek Superfund Site dredge spoils area. We agree and request that the Environmental Protection Agency and the U.S. Department of Justice withdraw or amend the proposed May 16, 2018 Consent Decree lodged with the United States District Court for the Southern District of Georgia in the lawsuit entitled United States v. Hercules LLC, Civil Action No. 2:18-cv-00062-LGW-RSB.

As the Brunswick City and Glynn County Commissions made clear in their resolution, our community suffers from the mismanagement of a large land area in a key economic corridor for Glynn County in several ways. The soil contaminates, such as toxaphene, are located next to our valuable marshes which are nurseries for our fisheries and other wildlife. The soil contaminates are situated above our pristine Floridan Aquifer and could pose a future risk to our pristine water supply.

The site is an eyesore for our tourists who travel to visit St. Simons Island, Jekyll Island, and Sea Island. Tourism is an important industry that brings income and provides vital jobs to our community. The site also ties up valuable real estate that could add to our tax digest.

We are dismayed that the Consent Decree would fall short of requiring a complete removal and remediation of all the contamination. That is the only way to ensure the long-term viability of the site, our water supply, and our fisheries. We heartily commend the actions of the Glynn County Board of Commissioners as well as Brunswick Mayor Cornell Harvey and the Commissioners of the City of Brunswick for their proactive efforts to protect our environment.

It is our sincere hope that the Environmental Protection Agency and the U.S. Department of Justice will heed the wisdom of our locally elected officials.

Sincerely,

Don Hogan, District 179

Jeff Jones, District 167

Cc:    Glynn County Board of Commissioners
       Brunswick City Commission

Exhibit 1

Corr
90-11-3-11685

Page 93

*House of Representatives*
*Atlanta, Georgia*

JEFF JONES
Representative, District 167
139-358 Altama Connector
Brunswick, Georgia 31525

P 2:48

18 SEP 24

DEPT. OF JUSTICE
ENVIRONMENT ENFORCEMENT

2009447811 B030

United States Environmental Protection Agency
Assistant Attorney General
U. S. DOJ ENRD (Environmental Resources Div.)
P. O. Box 7611
Washington, DC 20044

X-RAYED

DOJ MAILROOM
SEP 24 2018

USPS
2018
FOREVER
USA

Exhibit 1    Page

| From: | Woody Woodside |
| --- | --- |
| To: | ENRD, PUBCOMMENT-EES (ENRD) |
| Subject: | FW: Terry Creek Letter-Final |
| Date: | Wednesday, September 19, 2018 12:34:02 PM |
| Attachments: | Terry Creek Letter-Final.pdf |

ATTN:

Assistant Attorney General, USA

DOJ—ENRD, P.O. Box 7611

Washington, DC 20044-7611

Re: Comment on proposed Consent Decree- Unites states of America v. Hercules, LLC, Civil Action No. 2:18-cv-0062-LGW-RSB

Please see attached statement.

M. H. Woodside

President

Brunswick-Golden Isles Chamber of Commerce

Brunswick, Georgia 31520

Exhibit 1                                                                 Page 95

  

September 19, 2018

Assistant Attorney General, U.S.
DOJ—ENRD, P. O. Box 7611
Washington, DC 20044-7611

   Re: Comment on Proposed Consent Decree; United States of America v. Hercules, LLC,
     Civil Action No. 2:18-cv-00062-LGW-RSB

Dear Sir/Madam:

   The Brunswick and Glynn County Development Authority, Brunswick-Golden Isles Chamber of Commerce, and the Golden Isles Convention and Visitors Bureau (the Group) are writing this as our comment to the proposed Consent Decree in United States of America v. Hercules LLC, pending in the United States District Court for the Southern District of Georgia, Brunswick Division, Civil Action No. 2:18-cv-00062-LGW-RSB, in Glynn County. It is our understanding that there are no other options upon which to comment at this time. We have adopted the Shared Vision for the Brunswick and Golden Isles for "Working together to make Brunswick and the Golden Isles an exceptional place in Georgia to live, work, and visit by strengthening our communities and enhancing the quality of life".

   We acknowledge not only the EPA's consideration for the environment in this matter, but also for the health and welfare of the community. As mentioned in the Joint Resolution of the City of Brunswick, Georgia and Glynn County, Georgia regarding the Consent Decree, the Highway 17 Corridor is identified as a gateway corridor that is vital to the economic health of the community; we contend that sufficient remediation of the site is necessary for the long-term health and welfare of our community.

   We are frustrated by the length of time it has taken to reach a resolution of this matter and our preferred method of mitigation is Alternative 2, complete removal and remediation of the sediment, a resolution which will be satisfactory to the Group. We want and expect this issue to be resolved in the best long-term interest of this community through the joint work of the Court System, Hercules, and the EPA. We also understand that any resolution of the short-term or long-term environmental issues will be at no cost to the taxpayers of Glynn County.

   Additionally, we urge the EPA and Hercules to determine an aggressive and accountable timeline for development and implementation of plans related to OU2 and OU3.

   Thank you for your consideration.

Brunswick and Glynn County Development Authority

By:_____

Ryan Moore, President

Brunswick-Golden Isles Chamber of Commerce

By:_____

M. H. "Woody" Woodside, President

Golden Isles Convention and Visitors Bureau

By:_____

Scott McQuade, President

Exhibit 1                    Page 97

# EXHIBIT B

## RESOLUTION No. 2015-06

**RESOLUTION SUPPORTING THE REMOVAL OF CONTAMINATION FROM OPERABLE UNIT ONE OF THE TERRY CREEK SUPERFUND SITE; URGING THE U.S. ENVIRONMENTAL PROTECTION AGENCY TO SELECT ALTERNATIVE 5 – BOX CULVERT RE-ROUTED WITH LIMITED SEDIMENT REMOVAL -   AS THE PREFERRED REMEDIATION ALTERNATIVE; AND URGING THE STATE AND FEDERAL GOVERNMENTS TO CAUSE REMOVAL OF ALL CONTAMINATION IN THE SOIL AND GROUNDWATER OF THE TERRY CREEK SUPERFUND SITE INCLUDING OPERABLE UNITS ONE, TWO, AND THREE.**

**WHEREAS,** U.S. 17 is a primary arterial thoroughfare in Brunswick, Georgia that connects Jekyll and St. Simons Islands to the mainland of Brunswick and Glynn County and is part of the highway system linking Brunswick to neighboring counties to the north and south; and,

**WHEREAS,** U.S. 17 is an important component to the economic health of Brunswick and Glynn County; and,

**WHEREAS,** U.S. 17 has been designated a gateway corridor; and,

**WHEREAS,** Hercules Terry Creek Outfall Operable Unit One is adjacent to this vital corridor; and,

**WHEREAS,** contamination of Operable Unit One is detrimental to the revitalization of the U.S. 17 corridor; and,

**WHEREAS,** the U.S. Environmental Protection Agency Region IV has outlined several options for the remediation of Operable Unit One; and,

**WHEREAS,** the Mayor and Board of Commissioners of the City of Brunswick urge the U.S. Environmental Protection Agency to select <u>Alternative 5 - Box Culvert Re-Routed with Limited Sediment Removal</u>; and,

**WHEREAS,** further the Mayor and Board of Commissioners of the City of Brunswick urge that all soil and groundwater remediation within the Terry Creek Superfund Site be completed for the redevelopment of the U.S. 17 Gateway Corridor;

**NOW, THEREFORE, BE IT RESOLVED** by the Mayor and Board of Commissioners, acting in its capacity as the governing authority of The City of Brunswick, formally supports that:

1. EPA select <u>Alternative 5 – Box Culvert Re-Routed with Limited Sediment Removal</u> as the preferred remediation alternative for Operable Unit 1;

2. In addition to selection of Alternative 5 as the preferred remediation alternative, the U.S. Environmental Protection Agency proceed with complete soil and groundwater remediation of Outfall Ditch / Operable Unit 1, as well as Operable Units 2 and 3 (OU1, OU2, and OU3) of the Terry Creek Superfund Site.

**RESOLVED** this _10th_ day of September, 2015.

Cornell L. Harvey, Mayor

ATTEST: Naomi D. Atkinson, City Clerk

# EXHIBIT C



# GLYNN COUNTY ATTORNEY

701 "G" Street, Second Floor, Historic Courthouse Brunswick, Georgia 31520
Phone: 912-554-7470 Fax:  912-554-7597

*A Golden Past.*
*A Shining Future.*

**<u>VIA U.S. MAIL and EMAIL</u>**

September 4, 2015

Scott Martin
Remedial Project Manager
Superfund Remedial Branch
U.S. Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA  30303

RE:   RESOLUTION OF THE GLYNN COUNTY BOARD OF COMMISSIONERS
SUPPORTING THE REMOVAL OF CONTAMINATION FROM OPERATIVE
UNIT  ONE AND URGING THE STATE  AND  FEDERAL GOVERNMENTS
TO CAUSE    REMOVAL OF ALL CONTAMINATION IN THE SOIL AND
GROUNDWATER  OF  THE  TERRY  CREEK  DREDGE  SPOILS  AREA
INCLUDING  OPERATIVE UNITS ONE, TWO, AND THREE.

Dear Mr. Martin:

Attached hereto please find a resolution of the Glynn County Board of Commissioners
pertaining to the above-referenced matter.

Thank you for your kind consideration of same.  Should you have any questions, or if I
may be of any further assistance, please do not hesitate to let me know.

Sincerely,

Aaron W. Mumford
Glynn County Attorney

AM/cas
Attachment
c:  Angela Miller, Community Involvement Coordinator (via email)
    Glynn County Board of Commissioners (via email)

# GLYNN COUNTY BOARD OF COMMISSIONERS
# BRUNSWICK, GEORGIA

Resolution: #R-38-15
Adoption: September 3, 2015

At the regular meeting of the Glynn County Board of Commissioners, held in the Glynn County Historic Courthouse, Second Floor Commissioners' Meeting Room, 701 "G" Street, Brunswick, Georgia, there were present:

Dale Provenzano, Chairman, District 2
Richard Strickland, Vice Chairman, District 3
Michael Browning, Commissioner, District 1
Bill Brunson, Commissioner, District 4
Allen Booker, Commissioner, District 5
Mark Stambaugh, Commissioner, At Large Post 1
Bob Coleman, Commissioner, At Large Post 2

On the motion of Commissioner Booker, which carried unanimously, the following Resolution was adopted:

**RESOLUTION SUPPORTING THE REMOVAL OF CONTAMINATION FROM OPERATIVE UNIT ONE AND URGING THE STATE AND FEDERAL GOVERNMENTS TO CAUSE REMOVAL OF ALL CONTAMINATION IN THE SOIL AND GROUNDWATER OF THE TERRY CREEK DREDGE SPOILS AREA INCLUDING OPERATIVE UNITS ONE, TWO, AND THREE.**

**WHEREAS,** U.S. 17 is a primary arterial thoroughfare in Brunswick, Georgia that connects Jekyll and St. Simons Islands to the mainland of Brunswick and Glynn County and is part of the highway system linking Brunswick to neighboring counties to the north and south; and,

**WHEREAS,** U.S. 17 is an important component to the economic health of Brunswick and Glynn County; and,

**WHEREAS,** U.S. 17 has been designated a gateway corridor; and,

**WHEREAS,** Hercules Terry Creek Outfall Operative Unit One is adjacent to this vital corridor; and,

**WHEREAS,** contamination of Operative Unit One is detrimental to the revitalization of the U.S. 17 corridor; and,

**WHEREAS,** the U.S. Environmental Protection Agency Region IV has outlined several options for the remediation of Operative Unit One; and,

**WHEREAS,** the Glyn County Board of Commissioners believes that complete remediation is necessary for the redevelopment of the U.S. 17 Gateway Corridor to occur;

**NOW, THEREFORE, BE IT RESOLVED** by the Glynn County Board of Commissioners, acting in its capacity as the governing authority of Glynn County, formally supports the complete removal of contamination from Operative Unit One. Further, the Glynn County Board of Commissioners urges the state and federal governments to cause removal of all contamination in the soil and groundwater of the Terry Creek Dredge Spoils area including Operative Units One, Two, and Three.

This Resolution shall be effective upon adoption.

This the 3rd day of September, 2015.

BOARD OF COMMISSIONERS,
GLYNN COUNTY, GEORGIA

DALE PROVENZANO, CHAIRMAN

ATTEST:

CINDEE OVERSTREET, CLERK